Mr. Marshall, would you call the next case on the docket, please? Your Honor, the next case on the docket is 2-15-4-8-1-3. We will be standing in a row in front of the defendant, G. G. Gist, defendant's account. I hereby call the defendant on the defendant's account, Ms. Jessica Bowman Polizza. I hereby call the defendant on the defendant's account, Ms. Jessica Bowman Polizza. Thank you. Ms. Polizza, on behalf of the appellant, you may proceed. May it please the Court, Jessica Arizo, Office of the State Appellate Defender, on behalf of William Gist. The issue before the Court today is whether William Gist was denied his right to due process at his grand jury proceeding when the prosecutor used misleading and false testimony to secure an indictment. Well, the State is arguing an appeal that there's a threshold question here of whether or not the prosecutor's conduct needed to be intentional. It's our position that it did not need to be intentional, intentionally misleading. Based on the case law, this Court in Oliver stated that the State's presentation of deceptive evidence denied the defendant due process regardless of whether the deception was intentional, because the deception was crucial to the determination of probable cause. Similarly, more recently, this Court also repeated that same proposition in People v. LaGore, a case that I have recently filed a motion to cite additional authority on. Yes, let's talk about that. I didn't see that motion. It's unresolved. Counsel, do you have an objection to the granting of the motion to cite additional authority? No, Your Honor. If that consent will be granted, it will be able to be cited and considered. Thank you. Thank you, Your Honor. But, Counsel, there seems to be the Hart case had a different panel from the Second District that seemed to have come out with a conflicting holding that the State did need to intentionally mislead in order to have a violation of due process. Correct. The Hart panel, however, did not reference People v. DiVincenzo, the Illinois Supreme Court case that was cited by Oliver as well as LaGore. And they sort of, by not considering that Illinois Supreme Court precedent, I feel that that case's opinion did not fully analyze the issue under the current Illinois law. And in this court's opinion in Oliver, they did reference Hart and said that, acknowledged the Hart case and said that under DiVincenzo, it was just not tenable to maintain the position that the Hart court took. DiVincenzo stated that due process rights were violated whether one prosecutor either deliberately or intentionally misleads the jury, uses known or perjured or false testimony, or presents other deceptive or inaccurate evidence. Excuse me, Counsel. I think the wording is may. So it's not are or were, but may be violated. Correct? Yes, may be violated. Correct. Right. So that's just slightly different. I misspoke there. Let me ask you a point of question in light of what you're saying. If we were to find in a given case that the prosecutor intentionally misled the grand jury, does that end the inquiry? Is that the end of the case? No. I believe that regardless of whether there was intent, that the next step would be whether or not there was prejudice shown. Right. It's a two-step process. Correct. Correct. Let me clarify that. Yes. Both have to be established in order for there to be a true violation of due process. I'm sorry. Both which? The misstatement and prejudice. Absolutely. Correct. Yes. After, you know, if this court determines that the fact that the statements were not intentional does not matter, then the next step would indeed be was there, was the defendant's due process violated here? And then in order to determine that, we would need to go through the statements that were contending were proper and determine whether or not if those statements were removed from the proceeding, would the grand jury have then indicted based on the remaining testimony? So it's almost a three-step process. I guess so, yes. The prejudice would be determined by whether or not the grand jury would have otherwise indicted the defendant. Right. I suppose the second step sort of has multiple parts. Correct. In order to determine whether there was prejudice, you need to determine whether or not would the grand jury have indicted without that deceptive or misleading testimony. So in light of your analysis, which I believe is substantially correct, tell us why the grand jury would not have indicted him, perhaps in the consideration of this evidence. Okay, so there's basically four main areas of contention that we have with the... Let me preface that. Do you want an explanation of why we think they're improper, or do you want me to move on to whether or not if they were just removed? If they were removed, I think that's the ultimate issue. Okay. So if they were removed, we have to look at, Ben, what would the grand jury have heard? So they would have heard testimony that this guest came in, her son had his eyes rolling in the back of his head, the defendant was alone in the room with the victim, and the victim wouldn't say his name. The defendant admitted to being salty or frustrated, picking up the victim by his arms and throwing him on the bed, and the child at some point fell off the bed. The child was taken to the hospital, and depending on if... I mean, the hospital results were that he sustained irreversible brain damage and was in a vegetative state. So essentially what you have is that the defendant was alone with the child in the room, he was frustrated with the child, and something happened to the child to have his heart stop working, and he is now in a vegetative state. Argument is that's not enough to show that the grand jury would have indicted on that. Did he ever admit that he punched the child in the chest? He admitted to punching the child for the purpose of CPR, for resuscitation of the child. He admitted to the child on the bed, correct? Yeah, he picked the child up by his arm and threw him on the bed, yes. So the statement that you mentioned about the striking him in the chest, we would argue that that is part of what would have to be removed in the analysis in order to determine whether or not the grand jury would have indicted, because as the court said below, that was materially misleading to leave in the part about him striking the child in the chest and not putting it into context, making it sound as though he struck the child in anger. Did he ever, did the defendant ever say that he was concerned that other family members would find out that he was somehow responsible for the child's injuries? No, that statement was never said. Was it said to anyone as a record? No. And the judge below, as well as the state here on appeal, I believe has said that that shouldn't be considered because it was such a misstatement. All right, the court found it wasn't in any of the police reports, but does anybody reference that statement? Not that I'm aware of. Okay. Are there any other questions? Well, there was an objection, of course, and the argument is that the officer misled the grand jury by alluding to the fact that allegedly the defendant changed his story, correct? Correct. And apparently there's a reference here that in his first statement to Wilkerson at the hospital, he omitted any reference to falling off the bed, and that there were some details later. And the trial court found that it was a conflict, correct? The trial court found that there was some truth to it. Our argument would be, though, that the way the testimony was given, the fact that the defendant changed his story, was so connected to the, he said he didn't fall off the bed, which was completely untrue. He never said that the child didn't fall off the bed. So the way that the testimony came out, he said the defendant changed his story as to what happened. Correct. And he said the victim didn't fall. Correct. So whether the defendant may have omitted a detail from one police statement to the other doesn't remove the prejudice from the fact that it made it sound like he changed his story and said that the child didn't fall. That is completely untrue. What about did he ever tell anyone that the child may have hit his head on something? There was testimony of the grand jury that the officer heard the defendant tell a nurse that. The nurse never testified, but that was the statement that he heard the defendant tell the nurse that he may have hit his head on the TV stand. But he didn't say anything about hitting his head earlier to either his wife or to the police at the house? No, he didn't speak with the police earlier. So the first statement that the police officer heard was the statement to the nurse. Well, the trial court found the defendant didn't change his story. He initially told his wife that W.G. had really fallen off the bed. He later added that W.G. may have hit his head on something. He never said that? He said the part about hitting his head, he said that to a nurse. Oh, but it was stated, though. Correct. Yes. I'm sorry if I was unclear about that. Okay. Are there any other questions? No. Okay. And for that, we would just ask that you vacate Mr. Gitts' conviction and dismiss the indictment with prejudice. All right. Thank you. Counsel, you may proceed. Good morning, Your Honors. Counsel, may it please the Court. My name is Stephen Rogers, and I represent the people of the state of Illinois. Your Honors, I guess I'll start with the prejudice because that would likely be dispositive of this case. There are a lot of disagreements, but I think I'll first go to the trial judge's decision on prejudice. And he goes through the facts that the grand jury would have heard, even taking everything the defendant says to be the truth. The defendant's alone in the room. He's salty, which the trial judge took as angry. I think that would be a reasonable reaction to the word salty. The victim could not state his name properly. Defendant became angry at that. He admits to throwing the child down, not in any sort of playful way, but out of anger at this situation. He did, in fact, change his story, and defense and the state stipulated the evidence on this motion to dismiss. And the defendant changes his story in almost every different police report. The officer overhears the defendant at the hospital tell a nurse that he hit his head on something when he fell. And then when the police officer, Detective Wilkerson, takes him to the side, he does not mention either that the child fell or that he hit his head on anything. And instead says he threw the child, goes back to grooming himself, and then turns around to notice the child breathing awkwardly and has a bloody nose. And then, of course, we have the medical testimony that even if you clarify that it was only the most likely diagnosis instead of the determinative diagnosis, you still have the doctor being strongly in favor of the fact that the child was struck in the chest, direct law enforcement trauma, which most likely led to a commodity of course, which is essentially a heart concussion. The state's position is that it is almost impossible the grand jury on those facts alone, even without defendant's admission that he struck the child's chest, would have still indicted him. And the standard being probable cause or reasonable grounds? Yes, Your Honor, probable cause. And the state's position on the statement that the defendant admitted that he struck the child in the chest, I think when the claim is that something is misleading, the result should be that you give the context. And even if the state would have explained to the grand jury that it was an attempted CPR, I think that would have raised a lot of eyebrows. We have a three-and-a-half-year-old child that is struck in the chest with a clenched fist. I don't think anybody would expect someone to initiate CPR in that manner. Did the trial court express concern with this, with some of these misstatements or issues that were addressed to the grand jury? Absolutely, Your Honor. And to be quite honest, I would have some issues. I think some of the timeline is slightly altered. And then, like, as the defense stated, when the defendant, the state alleged the defendant changed his story, it was really throughout the entirety of the interviews, whereas the state linked it to the statement that the child did not fall off the bed, which was omitted from one statement, but the state agreed in the brief that thoroughly, and in the written statement, did say the child fell off the bed. So the state's position is that prejudice would not be found even under the Oliver standard, that no intent needed to be required. There would be no prejudice. There would be no actual and substantial prejudice. Now, the reason I went into intent is you get past a trial where there's a conviction beyond a reasonable doubt and no errors are raised, it seems slightly troubling that all that would be unwound because something was presented a little out of context or an inaccurate fact would have been presented. And so we don't think that the remedy, even if there was an inaccurate fact presented unintentionally, would be to unwind the entire proceedings. Because generally what happens in these cases is the judge grants the motion to dismiss, and then it goes up on state appeal, and you kind of are just focused on that, whereas here we had a trial where much more evidence was adduced, and the trial judge acting as the trial fact made the decision. Well, doesn't the Supreme Court case de Vincentio indicate that there may be a due process violation even if the material isn't presented deliberately, but if there is simply deceptive or inaccurate material presented? So, I mean, our Supreme Court opined about that, whether or not you believe that's reasonable or not. We're bound to follow what our Supreme Court tells us. No, absolutely, Your Honor. And I don't think it's an unreasonable way to read that, the way it's set up. It's interesting because that case really had nothing to do with the presentation of evidence. And so when that statement is made, it's kind of like, as you said, it may follow, and then they kind of list some examples. But really what happened there was a violation of the grand jury secrecy. Correct. So in the end, you know, so that's not to say that this Court still does not have to follow a pronouncement of law from the Supreme Court. The point of the brief was that if you read it that way, where the prosecutor just presents any deceptive or inaccurate evidence, there's really no need to use the first two, because they both require some intentional knowing use of perjury or an intent to mislead. And so it kind of, the third would swallow the whole of the other two. And the Supreme Court case, United States v. Williams, they really warn against kind of critiquing the presentation as a way to then say, was there sufficient evidence? And that was my point. I mean, there's some dispute. At least I know Justice Grometer in his, I guess it was a concurrence in Oliver, he agreed with the result, but he disagreed with that exact. And then there was even a dissent in People v. Ryan recited by defense counsel where the majority says, you know, we agree with Oliver. But then the dissent says, we agree with Oliver if it's a misrepresentation of law, because you really can't say that's unintentional if you're misrepresenting the law. And really that was, I think in cases like Reimer and Hunter, usually the misleading statement or deception is so critical. You have a grand juror asking the question, well, is there any chance this is possible? And the witness says, oh, no, that clearly can't be the case. And then they give the true bill. And so I think the State's position is primarily without having to dispute Oliver or interpreting Deven Chinzo, there was no actual and substantial prejudice here. So the State would ask this court to affirm if there are no further questions. So you're saying our analysis could be almost similar to a Strickland where you look at prejudice irrespective of whether or not it was intentional or not. You can go to the prejudice problem. Absolutely, Your Honor. I know courts, this court does it occasionally where you say, we understand there's this issue, but it would be harmless anyways. And so we don't need to address it. And the State would be perfectly fine with that type of analysis as well. So the State respectfully requests that this court affirm. Thank you. Thank you very much, Mr. Reimer. Ms. Rizzo, you may address the court. First, counsel stated that it's their position that if there was misleading testimony given that we should, when examining the prejudice, look at if the jury had received the proper context. And our position is that you can't talk about the evidence that they should have put in when they put in the wrong evidence. You have to take out the wrong evidence and see what remains. What have resulted in an indictment. So I don't think that the context of the hitting the child in the chest would be part of the analysis. You take out the hitting the child in the chest, and it's just not part of your consideration. Well, wouldn't it be important if there was a qualifier, I hit the child in the chest, and then later I hit the child in the chest trying to do CPR? I mean, you have time to think about it afterwards, and now you add a qualifier. The defendant, are you saying the defendant? No, I'm saying if, well, what did he actually say? He said that he hit the child for the purposes of CPR. But how did he hit the child? He hit the child with a closed fist to the chest. Okay. And did he ever say how that came to pass? Where did he see that done? Where did he learn that done? No, he didn't say anything. But there was testimony at the trial. I believe it was Dr. Fattel's testimony that that's not unheard of as a way to restart someone's heart if you don't have an AED. It's not something out of the realm of possibility. A 3-1⁄2-year-old, did he qualify it to? No, I don't believe he did. But, yeah, the defendant never specifically said where he got that idea. I mean, I'll volunteer Justice Hudson. He could probably take it better than a 3-1⁄2-year-old in case we needed to do that. It's amazing the positions they try and put me in. If there are no other questions. I don't believe there are. Okay, thank you. I'd like to thank both counsel for the quality of their arguments here this morning. The matter will, of course, be taken under advisement and a written decision will issue in due course. We stand adjourned and are subject to call to order.